# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-0527V
UNPUBLISHED

| | |
|---|---|
| MICHAEL DEUTSCH,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br>Filed: September 24, 2021<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Onset and Site of<br>Vaccination; Influenza (Flu) Vaccine;<br>Shoulder Injury Related to Vaccine<br>Administration (SIRVA) |

*Maximillian J. Muller*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Camille Michelle Collett*, U.S. Department of Justice, Washington, DC, for Respondent.

## FINDINGS OF FACT[1]

On April 10, 2018, Michael Deutsch filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") from an influenza ("flu") vaccine he received on December 1, 2016. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished Fact Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find the vaccination alleged as causal was administered in Petitioner's left deltoid, and that the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination.

## I.   Relevant Procedural History

On June 9, 2020, about 14 months after the case was initiated, Respondent filed a Rule 4(c) Report arguing that Petitioner had not established entitlement to compensation. ECF No. 48. Respondent specifically maintained that "it is unclear whether [P]etitioner's initial shoulder pain occurred within 48 hours of vaccine administration." *Id.* at 6. Respondent further argued that "the vaccine administration record itself reflects that [P]etitioner received the vaccine in the right shoulder and his shoulder pain occurred in his left shoulder." *Id.* at 7.

On August 31, 2020, Petitioner filed a Motion for a Fact Ruling seeking a fact ruling on the issues of site of vaccination and onset of pain. ECF No. 50. On October 9, 2020, Respondent filed a response to the motion. ECF No. 54. The issues of site of vaccination and onset are ripe for a fact ruling.

## II.   Issue

The following issues are contested: (1) whether Petitioner received the vaccination alleged as causal in his right or left arm; and (2) whether Petitioner's first symptom or manifestation of onset after vaccine administration (specifically pain) occurred within 48 hours as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(c)(10)(ii)-(iii) (required onset for pain listed in the QAI; pain and reduced range of motion limited to the shoulder in which the intramuscular vaccine was administered).

## III.   Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove by a preponderance of the evidence the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). The Federal Circuit has said that

> Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to

> facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events.

*Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005).

The Federal Circuit recently stressed, however, that records enjoy no automatic presumption of accuracy, despite their "trustworthy" evidentiary character. *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1384 (Fed. Cir. 2021). Indeed, "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998); *see also Lowrie*, 2005 WL 6117475 at *19 ("written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent").

The Court has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

Thus, medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare not only the medical records, testimony, but also all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational). And although later oral testimony that conflicts with medical records is less reliable as a general matter, it is appropriate for a special master to credit a petitioner's lay testimony where is does not conflict with the contemporaneous records. *Kirby*, 997 F.3d at 1382-84.

## IV.   Finding of Fact

### A.   Site of Vaccination

Based on a review of the entire record, including all medical records and affidavits, the arguments in Respondent's Rule 4(c) Report, the arguments in Petitioner's Motion for a Fact Ruling, and the arguments in the response thereto, I find that Petitioner's December 1, 2016 flu vaccine was administered in his left arm, as he contends. The following points are particularly relevant to that finding:

- Petitioner's pre-vaccination medical records reveal no injuries, inflammation, or dysfunction in either shoulder or arm. At most, Petitioner suffers from gout, which has caused deformities in his hands. Ex. 1 at 2.

- Petitioner received the flu vaccine at his primary care physician ("PCP") in Cary, North Carolina, on December 1, 2016. Ex.1 at 1. The vaccine record states that the vaccine was administered into Petitioner's right deltoid. *Id.*

- At his initial visit to his doctor for his shoulder pain, on January 12, 2017, Petitioner reported, and Nurse Practitioner ("NP") Thompson recorded, "flu shot received 12/1/16 in patient's *left* arm." Ex. 1 at 13 (emphasis added).

- At the same January 12, 2017 visit, NP Thompson's written notes state that "Jobe's test performed – noted pain and weakness of left arm" and ordered "Xray of left shoulder." Ex. 1 at 13. Later in the record, NP Thompson noted that Petitioner reported "at patient's last visit he received the flu shot into his left arm." *Id.* at 14. Under progress notes, NP Thompson noted: "positive for arthralgias (left shoulder/arm pain)." *Id.* at 15.

- Under the "Physical Exam" portion of the record from the January 12, 2017 visit, NP Thompson stated that Petitioner "exhibits decreased range of motion (due to pain), tenderness (deep palpation), pain (with movement), and decreased strength (with certain ROM exercises)." However, those notations follow the words "*Right Shoulder.*" Ex. 1 at 18 (emphasis added).

- On March 31, 2017, Petitioner presented to Dr. Steve Struble for "evaluation of L shoulder pain." Ex. 3 at 8. Dr. Struble examined Petitioner and found his right shoulder, elbow and wrist/hand had full range of motion, negative impingement tests, full strength and no pain. *Id.* at 9. Dr. Struble's exam of Petitioner's left shoulder revealed "limited motion to 110 degrees with catching and pain. Positive Hawkin's. Mild tenderness over AC joint" and "pain in abduction of arm in scapular plane." *Id.* Dr. Struble ordered x-rays of Petitioner's left shoulder. Ex. 3 at 10. He diagnosed Petitioner with rotator cuff bursitis, administered a DepoMedrol injection, and recommended physical therapy. *Id.*

- Petitioner presented to Dr. Struble two additional times, on July 13, 2017 and February 27, 2018. Ex. 3. At each visit, Dr. Struble noted decreased range of motion, pain, and positive Hawkin's impingement test in Petitioner's left shoulder. *Id.* at 2-7. Dr. Struble administered a cortisone injection and recommended physical therapy at each appointment. *Id.* at 2-7.

- Petitioner submitted two affidavits asserting that his flu shot was administered into his left shoulder. Ex. 5, 10. Specifically, Petitioner stated that NP Thompson left the examination room and another nurse entered to administer the vaccine. Ex. 10 at ¶1. The vaccine administration record confirms that the injection was given by Pamela Divincenzo, CMA. Ex. 1 at 1. Mr. Deutsch stated that he recalled that he was sitting to the right, behind the door and that he remembered "very vividly receiving the shot in my left arm. This is not something I could forget considering what I dealt with as a result." Ex 10 at ¶1.

- Petitioner has also stated that once he was made aware of the inaccurate information in his medical records, he took steps to correct the records. Ex. 10 at ¶11-12. He represents that he "called 3 times and visited the office twice." *Id.* at 11. On March 23, 2019, Petitioner submitted a request to amend the December 1, 2016 record, which was subsequently denied. Ex. 13.

5

- The records do not contain any complaints of nor treatment for right shoulder pain.

The entirety of the record preponderantly supports the conclusion that Petitioner more likely than not received the December 1, 2016 flu vaccine in his left arm.

I note the degree to which Petitioner was consistent in his pain reporting when seeking treatment. On January 5, 2017, in his first communication to his primary care provider about the problem (not long after vaccination), Petitioner stated that "since receiving the flu shot, he continued to have pain around the area where the shot was given." Ex. 2 at 2. Although Mr. Deutsch did not here identify *which* arm had pain in the email, he did mention that he made an appointment for January 12, 2017 to address the pain." *Id.* at 1. Then, at the January 12, 2017 visit, Mr. Deutsch complained of "pain in his left shoulder." Ex. 1 at 13. Mr. Deutsch thereafter continued to complain of left shoulder pain at each subsequent doctor encounter, including with Dr. Struble, his orthopedist. Ex. 3. Petitioner never complained of right shoulder pain.

The record of the January 12, 2017 appointment with Nurse Practitioner Thompson is admittedly problematic, since the physical exam notes from that record state that Mr. Deutsch's *right* shoulder had pain, limited range of motion, and decreased strength. Ex. 1 at 18. However, the remainder of the record indicates that NP Thompson treated Petitioner's *left* shoulder - and in both sections where NP Thompson recorded Petitioner's complaints, she referenced his left arm. Ex. 2 at 13 ("Flu shot received 12/1/16 in patient's left arm. Since that time he is [sic] experienced pain in his left shoulder."); Ex. 2 at 14 ("At patient's last visit he received the flu shot into his left arm."). NP Thompson gave Petitioner the Jobe's test – and "noted pain and weakness of left arm." *Id.* at 13. Further, NP Thompson noted the following under her review of systems: "Musculoskeletal: Positive for arthralgias (left shoulder/arm pain)." *Id.* at 15. Finally, NP Thompson ordered an x-ray of Mr. Deutsch's left shoulder. *Id*. at 13. Accordingly, even this some-what equivocal record provides support for Petitioner's contention about the situs of vaccination, beyond his own witness statements. Taken as a whole, it is reasonable to believe that NP Thompson provided evaluation and treatment to Petitioner's left shoulder, despite the single notation to referring his right shoulder and arm.

Mr. Deutsch's vaccine administration record is similarly problematic, since it indicates that he received the vaccine in his right deltoid. Ex. 1 at 1. Petitioner's supplemental affidavit, however, provides some additional details about the circumstances of administration that call the record into doubt. As he has explained, NP Thompson left the examination room and another nurse entered to administer the vaccine. Ex. 10 at ¶1. Petitioner recalls sitting to the right, behind the door. *Id.* He stated that he remembers "very vividly receiving the shot in my left arm. This is not something I

could forget considering what I dealt with as a result." *Id.* The vaccine administration record confirms that the injection was given by Pamela Divincenzo, CMA, and not by NP Thompson. Ex 1. At 1.

Petitioner was unaware that his vaccine record stated he received the injection in his right arm until he was alerted to the fact by his attorney's legal assistant. Ex. 10 at ¶11. On March 23, 2019, Petitioner made a formal request to have his medical records of December 1, 2016 corrected. Ex. 13 at 3. The request was denied on April 4, 2019, because it was deemed by his medical provider that "the information is accurate and complete" as attested to by NP Thompson and her clinical supervisor, Michelle Walsh, RN, neither of whom were present when the vaccine was administered. *Id*. Respondent argues that the denial corroborates the record's accuracy, given that it was signed by NP Thompson, who treated Petitioner on both December 1, 2016 and January 12, 2017. Opp. at 10. However, Mr. Deutsch only sought to correct the record with respect to identified situs of vaccine administration. Ex. 13 at 3. NP Thompson did not administer the vaccine and was not in the room when it was given. Ex. 2 at 1; Ex. 10 at ¶1. And both the request to change the record and the denial thereof occurred more than two years after the vaccination – meaning that neither contention has temporal "superiority" over the other. Other than a general statement that the record is accurate, there is no evidence in the record regarding how the decision to deny the request was reached. Thus, I do not give the denial significant weight.

Petitioner's medical records show that he had no history of any pain, inflammation, or dysfunction in either shoulder or arm. He suffered from left shoulder pain after vaccination, and he attributed it to a flu shot administered into his left shoulder. Ex. 1, 2, 3, 6, 10. He received treatment only to his left shoulder, including physical examinations, x-rays, and cortisone injections, from both NP Thompson and Dr. Struble. Ex. 2, 3. There is no indication in the record of any other possible cause of Petitioner's left shoulder pain.

Overall, Petitioner's own assertions are sufficiently corroborated by the medical record to accept his contention of vaccine situs. At worst, the conflicting medical records make this a "close-call," but in such cases Program case law counsels deciding the matter in a petitioner's favor. *Roberts v. Sec'y of Health & Human Servs.*, No. 09-427V, 2013 WL 5314698, at *10 (Fed. Cl. Aug. 29, 2013). Accordingly, I find it more likely than not that the vaccine alleged as causal in this case was administered to Petitioner in the left shoulder/arm on December 1, 2016.

### B. Onset

Based on a review of the entire record, including all medical records and affidavits, the arguments in Respondent's Rule 4(c) report, and the arguments in Petitioner's Motion

for a Fact Ruling, and the arguments in the response thereto, I find that the onset of Petitioner's pain occurred within 48 hours of vaccine administration. I find the following points to be particularly relevant:

- Petitioner's medical records from prior to his vaccination reveal gout, arthritic deformity of his hands, and high cholesterol, but no injuries to or medical issues with either shoulder or arm. *See* Ex. 2, 12, 14.

- Petitioner recalled that he "was surprised at the pain after [the nurse] left the room, much more than a normal shot. I immediately thought did she hit a nerve or a bone?" Ex. 10 at ¶2.

- Petitioner's wife recalled that Petitioner returned from his annual physical in December of 2016 "and complained of pain in his left shoulder where he just received his flu shot." Ex. 11 at ¶1.

- Petitioner stated that believed the pain would subside in a few hours or a few days. Ex. 10 at ¶2. He stated that he tried to relieve the pain with "aspirin, warm compresses, Naproxen, and prescription medication" before he "was forced to seek treatment." *Id.* at ¶5.

- On January 5, 2017, Petitioner emailed NP Thompson stating that "since receiving the flu shot I continue to have pain around the area where the shot was given." Ex. 2. Petitioner made an appointment for January 12, 2017.

- On January 12, 2017, Petitioner saw NP Thompson as his primary care provider, with "concern of arm still sore after flu shot." Ex. 2 at 11. Petitioner reported "flu shot received 12/1/16 in patient's left arm. Since that time he is [sic] experienced pain in his left shoulder. Reports increased pain with certain range of motion activities. Reports ineffective resolution of symptoms with OTC NSAID use, heat, or ice applied to the area." *Id.* at 13.

- On March 31, 2017, Petitioner presented to Dr. Steve Struble for "evaluation of L shoulder pain." Ex. 3 at 8. Dr. Struble noted that Petitioner had "tried NSAIDs PRN with some relief." *Id.* Dr. Struble examined Petitioner and found his right shoulder, elbow and wrist/hand had full range of motion, negative impingement tests, full strength and no pain. *Id.* at 9. Dr. Struble's exam of Petitioner's left shoulder revealed "limited motion to 110 degrees with catching and pain. Positive Hawkin's. Mild tenderness over AC joint" and "pain in abduction of arm in scapular plane." *Id.* Dr. Struble ordered x-rays of Petitioner's left shoulder. Ex. 3 at 10. He diagnosed Petitioner with

- rotator cuff bursitis, administered a DepoMedrol injection and recommended physical therapy. *Id.*

- Petitioner presented to Dr. Struble two additional times, on July 13, 2017 and February 27, 2018. Ex. 3. At each visit, Dr. Struble noted decreased range of motion, pain, and positive Hawkin's impingement test in Petitioner's left shoulder. *Id*. at 2-7. Dr. Struble administered a cortisone injection and recommended physical therapy at each appointment. *Id*. at 2-7.

- There is nothing in the records that suggest that Petitioner sought or received treatment for his shoulder pain or any other medical issue during the time between his vaccination and when he first sought treatment for his left shoulder pain.

The evidence preponderantly establishes that Mr. Deutsch's shoulder pain began within 48 hours of receiving the flu vaccine on December 1, 2016. Petitioner sought input from his primary care provider by email on January 5, 2017, approximately one month after his vaccination. Ex. 2 at 2. In that email, he stated that he "continue[d] to have pain around the area where the shot was given," suggesting onset at some time prior. *Id.* One week later, he presented to his primary care provider for an evaluation of his shoulder pain. Ex. 1 at 11. The record states that Mr. Deutsch received a flu shot on 12/1/16 and "since that time he is [sic] experienced pain in his left shoulder." *Id.* The January 12, 2017 medical record puts the onset of Petitioner's shoulder pain as December 1, 2016, the date of vaccination.

Petitioner's affidavit testimony is consistent with the record of January 12, 2017. Mr. Deutsch states that he had pain immediately upon administration of the vaccine on December 1, 2016. Ex. 10 at ¶1. He explained that he was "surprised at the pain after she [the nurse] left the room. I immediately thought – did she hit a nerve or a bone?" *Id.* Additionally, Petitioner's wife, Christine Deutsch, stated that she recalled that "Petitioner returned home from his annual check-up in December 2016 and complained of pain in his left shoulder." Ex. 11 at ¶1. It was at Mr. Deutsch's annual check-up on December 1, 2016 that he received the flu vaccination alleged to be causal. Ex. 1 at 4. The Federal Circuit has held that it is appropriate to credit the lay testimony of a petitioner when said testimony does not conflict with the medical records. *Kirby*, 997 F.3d at 1384. Petitioner's affidavit testimony provides consistent detail to the more general statements noted in the medical records.

Although Mr. Deutsch waited just over 30 days to seek medical treatment for his shoulder pain, his delay does not preclude a Table onset finding. Petitioner's delay is not substantial when compared to other SIRVA petitioners. *See e.g. Winkle v. Sec'y of Health*

*& Human Servs.,* No. 20-0485V, 2021 WL 2808993 (Fed. Cl. Spec. Mstr. 2021) (finding onset after a nearly five month delay); *Welch v. Sec'y of Health & Human Servs.* No. 18-0660V, 2020 WL 7483129 (Fed. Cl. Spec. Mstr. 2020) (finding onset after more than three and one-half month delay). Petitioner explained that during the weeks after his flu vaccination, he attempted to treat his pain with "aspirin, warm compresses, Naproxen, and prescription medication" until he "was forced to seek treatment." *Id.* at ¶5. He reported his efforts to self-treat to NP Thompson at his initial evaluation on January 12, 2017, who noted Mr. Deutsch's "ineffective resolution of symptoms with OTC NSAID use, heat, or ice applied to the area." Ex. 1 at 13. He also reported his efforts to self-treat to Dr. Struble on March 31, 2017. Ex. 3 at 8. It is not uncommon for SIRVA petitioners to attempt to relieve symptoms at home prior to seeking medical treatment. I find Petitioner's explanation for his brief delay to be reasonable and credible. *See, e.g.*, *Stevens v. Sec'y of Health & Human Servs*, No. 90-221, 1990 WL 608693, *3 (Fed. Cl. Spec. Mstr. 1990) (noting that clear, cogent, and consistent testimony can overcome missing or contradictory medical records).

Accordingly, I find there is preponderant evidence to establish the onset of Petitioner's pain occurred within 48 hours of vaccination. Petitioner's motion for a fact ruling is GRANTED.

V.  **Scheduling Order**

**Respondent shall file, by <u>Monday, October 25, 2021</u>, a status report indicating how he intends to proceed in this case in light of the record and this fact ruling**. The status report shall indicate whether he is willing to engage in tentative discussions regarding settlement or proffer or remains opposed to negotiating at this time.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master
