# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 18-0527V
UNPUBLISHED

| | |
|---|---|
| MICHAEL JOSEPH DEUTSCH,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: March 2, 2023<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain and Suffering; Influenza Vaccine; Shoulder Injury Related to Vaccine Injury (SIRVA) |

*Maximillian J. Muller*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Camille Michelle Collett*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On April 10, 2018, Michael Joseph Deutsch filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine he received on December 1, 2016. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

After I issued my Ruling on Entitlement finding Petitioner entitled to compensation, the parties could not agree on the damages to be awarded, and therefore the matter was scheduled for a "Motions Day" proceeding. For the reasons discussed below, and after

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

hearing argument from the parties, I find that Petitioner is entitled to compensation in the amount of $70,000.00 for his actual pain and suffering. The parties have agreed that Petitioner is entitled to $255.00 for his out-of-pocket unreimbursable expenses.

### I.   Procedural History

Initially, Respondent contested entitlement in this case, arguing that Petitioner had failed to prove by preponderant evidence that he received the flu vaccine in his left shoulder, and that the onset of Petitioner's shoulder pain did not meet the 48-hour window after vaccination to establish a Table SIRVA claim. ECF No. 48. On September 24, 2021, I issued a ruling finding in Petitioner's favor on both points. Thereafter, Respondent was ordered to file an amended Rule 4(c) Report based on my findings. Respondent then conceded that Petitioner was entitled to damages. Respondent's (Amended) Rule 4(c) Report at 5. ECF No. 60. On December 1, 2021, I issued a ruling finding that Petitioner was entitled to compensation. ECF No. 61.

The parties were subsequently unable to agree on an appropriate amount to award Mr. Deutsch for his pain and suffering, and agreed to brief the issue. ECF No. 60. On June 10, 2022, Petitioner filed her Brief in Support of Damages ("Mot."), and Respondent filed a Response on September 13, 2022 ("Opp."). Petitioner filed a Reply on October 10, 2022 ("Reply"). ECF Nos. 70, 72, 73. I then heard from both parties during a Motions' Day Damages hearing held on February 24, 2023.

### II.   Relevant Medical History

A complete recitation of the facts can be found in the petition, the parties' respective pre-hearing filings, in Respondent's Rule 4(c) Reports, and in the Findings of Fact issued on September 24, 2021. In brief summary, Mr. Deutsch's past medical history was significant for glaucoma, gout, boutonniere, deformity of the finger, spider veins, and hyperlipidemia. Petitioner's Exhibit ("Ex.") 1 at 6. There is no history of shoulder complaints noted. He was 63 years old when he received a flu vaccine in his left[3] shoulder on December 1, 2016, by Nurse Practitioner Thompson ("NP Thompson") at the office of his primary care physician ("PCP"). Ex. 1 at 1-9.

In his affidavit, Mr. Deutsch recalled that after receiving the vaccine, he "was surprised at the pain after [the nurse] left the room, much more than a normal shot. I immediately thought did she hit a nerve or bone? Not wanting to sound overly difficult, I

---

[3] The vaccination record states that Petitioner received the flu vaccine in his right deltoid. Ex. 1 at 9. However, I issued a fact ruling on September 24, 2021, finding that the vaccination record contained an error, and that Petitioner actually received the vaccination at issue in his left deltoid. ECF No. 56.

suppressed that thought and convinced myself that surely the pain would subside in a few hours. It did not." Ex. 10 at 1, ¶2.

On January 5, 2017, 35 days after vaccination, Mr. Deutsch emailed NP Thompson and reported that "[s]ince receiving [the] flu shot I continued to have pain around the area of where the shot was given." Ex. 2 at 2. One week later, on January 12, 2017, Mr. Deutsch presented in follow-up to NP Thompson with concerns of ongoing left shoulder pain after receiving the flu shot. Ex. 1 at 11-18. The complaint of "left shoulder pain" is followed by the notation of "[f]lu shot received 12/1/16 in patient's left arm." *Id.* at 13. The notes from the visit reflect that "[s]ince that time he [has] experienced pain in his left shoulder." *Id.* Petitioner reported "increased pain with certain range of motion ["ROM"] activities." *Id.*

On March 31, 2017, approximately 11 weeks after the last visit, Mr. Deutsch was seen for left shoulder pain by Steve Struble, M.D., at Total Joint Care. Ex. 3 at 8-10. Mr. Deutsch exhibited reduced range of motion of the left shoulder and yielded a positive sign on the Hawkin's shoulder impingement test. *Id*. at 9. Mr. Deutsch was assessed with rotator cuff syndrome. *Id*. An x-ray of the left shoulder performed on this date was normal. *Id.* He was given an intra-articular shoulder steroid injection. *Id.* Dr. Struble's notes stated that "[w]e discussed the cause of bursitis, the natural course, [and] what exacerbates and relieves the condition." *Id.*

Mr. Deutsch returned to Dr. Struble three and a half months later, on July 13, 2017, with continued complaints of left shoulder pain. Ex. 3 at 5-7. He reported that the "[s]hot was great for 3 months." *Id.* at 5. Dr. Struble diagnosed rotator cuff syndrome and most likely rotator cuff bursitis. *Id.* The notes stated that "[we] discussed the cause of bursitis, the natural course, [and] what exacerbates and relieves the condition." Mr. Deutsch received a second intra-articular steroid injection. *Id.* at 7.

Approximately seven-and-one-half months later, on February 27, 2018, Mr. Deutsch returned in follow-up to Dr. Struble. Ex. 3 at 2-4. The diagnosis remained "rotator cuff bursitis" and Mr. Deutsch received his third steroid injection. *Id.* The medical records reflect "MRI if not improved." *Id.* at 4.

Two years and five months later, on August 18, 2020, Mr. Deutsch returned to Dr. Struble with complaints of continued left shoulder pain. Ex. 19 at 5. He reported that the pain was worse with activities and at night. *Id*. Mr. Deutsch stated that he had tried NSAIDs with no relief. *Id*. He had positive impingement signs and continued to exhibit reduced range of motion in his left shoulder. *Id*. Dr. Struble opined that Mr. Deutsch had bursitis and administered a fourth cortisone injection. *Id*. at 7.

On August 21, 2020, Mr. Deutsch presented to Select Physical Therapy for an initial physical therapy evaluation. Ex. 20 at 4. He complained that in 2017 he was given a flu shot and had pain in the left shoulder since then. *Id*. Mr. Deutsch underwent a total of fifteen (15) physical therapy visits through October 9, 2020. *Id*. at 4-52.

Mr. Deutsch's affidavit described the extent of his injury. Ex. 21. During his initial course of treatment, Mr. Deutsch described how his pain levels varied depending upon the amount of ongoing activity and the timing of the prescribed cortisone shots received. He stated that each of the cortisone shots were effective for about two months. Ex. 21 at 1. Mr. Deutsch averred that he stopped treating the injury in early 2018 because he was not making progress. Instead, he learned to use his right arm almost exclusively, took excessive Naproxen and performed a home exercise program. *Id*. When he received Medicare in 2020, Mr. Deutsch returned to his doctor and received another cortisone injection and was prescribed a course of physical therapy. *Id.* at 2. He stated that the injury affected his life in various ways including his employment, everyday tasks, and recreational activities. *Id.*

### III. The Parties' Arguments

#### a. Petitioner

Mr. Deutsch seeks an award of $90,000.00 as compensation for his actual pain and suffering. Mot. at 1. In support, Petitioner states that he suffered his shoulder symptoms for nearly four years, albeit with a two-and-a-half-year gap in treatment. *Id*. at 6. He underwent four cortisone injections and 15 physical therapy sessions. Mr. Deutsch noted that his physical therapy began more than three and a half years after his initial injury. And although he is not making a claim for lost wages, Mr. Deutsch stated that his career plans were disrupted by his injury. *Id*. at 7. He stated that at the time of his vaccine in 2016, he was transitioning to a career as an independent catastrophic insurance adjuster. *Id*. Because of his injury, he was unable to perform the physical job duties required for this profession and ultimately let his license lapse and suffered lost income (although no lost wages demand was advanced ultimately). *Id*.; Ex. 21.

During the hearing and in his brief, Petitioner discussed prior SIRVA cases[4] that all involved injured claimants with similar mild to moderate non-surgical shoulder injuries,

---

[4] The specific cases cited by Petitioner are *Accetta v. Sec'y of Health & Human Servs.*, No. 17-1731, (Fed. Cl. Spec. Mstr. March 31, 2021), *Hartman v. Sec'y of Health & Human Servs.*, No. 19-1106V, (Fed. Cl. Spec. Mstr. Jan. 14, 2022); *Pruett v. Sec'y of Health & Human Servs.*, No. 17-561V, 2019 WL 3297083 (Fed. Cl. Spec. Mstr. Apr.30, 2019); *Dhanoa v. Sec'y of Health & Human Servs.*, No. 15-1011, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2015).

cortisone injections, physical therapy, and at least one of which had a similar gap in treatment. Focusing mainly on the *Accetta* case, Petitioner argued that the *Accetta* petitioner initially underwent a course of treatment for a six-month period that consisted of physical therapy, an MRI, and an orthopedic consultation. Mot. at 5-6; *Accetta v. Sec'y of Health & Human Servs.*, No. 17-1731, (Fed. Cl. Spec. Mstr. March 31, 2021). After a three-and-a-half-year gap in treatment, that petitioner returned to her orthopedist and underwent a repeat MRI. *Id*. Surgery was recommended, although the petitioner declined, choosing instead to continue with a home exercise program. *Id*. Following another year gap in treatment, the *Accetta* petitioner continued to complain of left shoulder pain and surgery was again recommended. *Id*. The petitioner was awarded $95,000.00 for her pain and suffering. Mr. Deutsch acknowledged that he did not receive an MRI and surgery was not recommended. Thus, Mr. Deutsch argued that a discounted award of $90,000.00 was reasonable and appropriate given that his circumstances were comparable. Mot. at 5-7.

### b. Respondent

Respondent maintains that a pain and suffering award of $57,500.00 is appropriate because of the overall mild course of Mr. Deutsch's injury. Opp. at 12. This case involved no surgical intervention, the records document a very mild shoulder discomfort for approximately four years after vaccination, and Petitioner only required conservative treatment. *Id*. at 7. Respondent also noted the various gaps in treatment to highlight the milder nature of Petitioner's SIRVA injury. *Id*. at 7-8. Respondent argues that the "gaps in petitioner's medical records in between actively treating his shoulder pain suggest that petitioner's pain was not persistent and ongoing in a way that it interfered with petitioner's life." *Id*. at 8.

Respondent cites to *Clendaniel v. Sec'y of Health & Human Servs.*, No. 20-213V, 2021 WL 4258875, at *2 (Fed. Cl. Spec. Mstr. Aug. 18, 2021), as a comparable case. Opp. at 11. That petitioner was 53 years old, sought treatment less than one month after vaccination, reported 8/10 pain and limited range of motion, received two cortisone injections, underwent an MRI, two arthrocentesis procedures, and sought treatment for nearly 14 months. *Id*. Respondent argues that the petitioner in *Clendaniel* in fact had a much more severe course of SIRVA, reporting much higher levels of pain than Mr. Deutsch, but received only $60,000.00 in pain and suffering. *Id*. Thus, Respondent maintains that a lesser sum in this case is fair. *Id*.

At the hearing and in his brief, Respondent distinguished the cases cited by Petitioner, maintaining that those claimants sought more care, had recommendations for surgery, and underwent MRIs. *Id*. at 9-11. Respondent argued that because of those

distinguishing factors, Mr. Deutsch's award should be significantly lower than the SIRVA cases cited by Petitioner. *Id*. at 10-12.

## IV. Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include an award "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no precise formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

A special master may also look to prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in each case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, a special master may rely on his or her own experience adjudicating similar claims. *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

### V. Appropriate Compensation in this SIRVA Case

#### a. Awareness of Suffering

Neither party disputes that that Mr. Deutsch had full awareness of his suffering and I find that fact is supported by the record evidence.

#### b. Severity and Duration of Pain and Suffering

Mr. Deutsch's medical records and affidavits provide a description of the pain he experienced throughout the duration of his injury. As noted, Mr. Deutsch's first complaint of shoulder pain to his primary care provider's office occurred fairly quickly, just 35 days after vaccination, where he reported worsening pain in his left shoulder since receiving the flu vaccination. Ex. 2 at 2. After seeing his PCP and attempting to treat the pain with conservative treatment, Mr. Deutsch received his first steroid injection. The initial injection worked to relieve his pain for nearly three months. However, the pain returned and when it did, Petitioner returned to his medical provider for further treatment. In all, Mr. Deutsch received a total of four cortisone injections, all providing varying degrees of relief.

However, the longest gap in treatment occurred after Mr. Deutsch received his third cortisone injection in February 2018 – he was not seen again until August 2020. In his affidavit, Mr. Deutsch explained why he stopped seeking treatment after February 2018:

> because it didn't seem like I was making any progress with formal treatment. I became proficient at limiting use and pain of my arm by using almost exclusively my right arm… I regularly used Naproxen in higher than recommended dosage to alleviate pain. I found Naproxen quite effective. I continued a regimen of rotator cuff exercises, as prescribed by Dr. Struble, almost every other day. The exercises did not have any dramatic improvement…
>
> I decided to return for additional treatment in August 2020. The home exercise program was not providing cumulative improvement. Pain frequency and degree had increased. I now had comprehensive Medicare insurance. I clearly wanted and need another cortisone shot. I wanted to be treated by a medical professional therapist in hopes to make progress. This expensive treatment was not available to me previously as I was not working and had only a form of catastrophic insurance through the Affordable Care Act and would not cover any of these treatments.

Ex. 21 at 1-2, ¶¶ 6-7.

7

In August 2020, when Mr. Deutsch did return for treatment, he continued to exhibit positive impingement signs and reduced range of motion of the left shoulder. Ex. 19 at 5. He received a fourth cortisone injection at this time. *Id*. at 7. Also in August 2020, Mr. Deutsch presented for an initial physical therapy evaluation. Ex. 20 at 4. He underwent a total of 15 physical therapy visits through October 9, 2020. *Id*. at 4-52. No further treatment records have been filed, thus, clarifying the total treatment time, including all gaps, to just under four years. Thus, the most equitable method in this situation is to compare the facts of this case to other similarly situated cases.

Although both parties cited to prior SIRVA cases in support of their proposed awards that were reasonably comparable, I believe a good starting point is Respondent's preferred comparable - *Clendaniel.* That petitioner had a course of treatment similar to Mr. Deutsch's - initial treatment a little less than one month after vaccination, one MRI, 19 total physical therapy sessions, two cortisone injections (with wo arthrocentesis procedures), gaps in treatment, and a cessation of treatment approximately fourteen months after vaccination. *Id.* at 1-4. The material differences between that treatment course and Mr. Deutsch's were that the *Clendaniel* petitioner reported higher levels of pain, underwent an MRI and two arthrocentesis procedures. Overall, Mr. Deutsch had a somewhat experience, but I will award a slightly greater amount to account for Mr. Deutsch's longer overall treatment course.

I also found the case cited by Petitioner, *Accetta v. Sec'y of Health & Human Servs*., No. 17-1731, (Fed. Cl. Spec. Mstr. March 31, 2021), to be a good comparable case which demonstrated that gaps in treatment do not necessarily indicate a lesser injury necessitating a lesser award. However, *Accetta* bears several notable distinguishing factors. The *Accetta* petitioner underwent an MRI which showed a tear in that petitioner's supraspinatus tendon that prompted a recommendation for surgical repair. In Mr. Deutsch's case, by contrast, an MRI was *recommended* if he did not improve, but he never did receive one (suggesting he did not see the need to press the issue with treaters), and no surgery was ever recommended. Thus, the award in the *Accetta* case was reasonably higher than what is appropriate here.

In sum, Mr. Deutsch's SIRVA injury is on the more moderate side, due in large part to the significant length of the treatment gap of nearly two and a half years. This large treatment gap is difficult to ignore, and supports the conclusion that the injury was not so severe that Mr. Deutsch felt the need to return to his physician on a more regular or urgent basis. However, Petitioner's overall treatment course was still lengthy, approximately four years, and Respondent's proposed award is slightly low. The smaller gaps in treatment do not necessarily warrant a lesser award as Respondent has argued. The cortisone injections provided relief as was intended, and a petitioner should not be penalized because he was measured in his treatment. On the other hand, in reviewing the

comparable cases cited by Petitioner, Mr. Deutsch's treatment was not extensive, and his gaps in treatment indicate that his injury was not so debilitating that it necessitated constant treatment. The medical records cannot corroborate the severe level of pain and suffering Mr. Deutsch attested to in his affidavit. Thus, some discount in the award proposed by Petitioner is warranted.

Under such circumstances, and considering the arguments presented by both parties at the hearing, a review of the cited cases, and based on the record as a whole, I find that **$70,000.00** in compensation for past pain and suffering is reasonable and appropriate in this case.

### c. Other Expenses

The parties agree that Petitioner has established the amounts sought for out-of-pocket medical expenses for a total of $255.00. Opp. at 2.

## CONCLUSION

In light of all of the above, the I award **Petitioner a lump sum payment of $70,255.000 (consisting of $70,000.00 for his actual pain and suffering, $255.00 for out-of-pocket medical expenses) in the form of a check payable to Petitioner, Michael Joseph Deutsch.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[5]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.